**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TRADER JOE'S COMPANY, a California Corporation, | <u>JURY TRIAL DEMANDED</u> |
| Plaintiff, | |
| v. | CASE NO. _____ |
| JOES WINE INC. d/b/a JOE'S WINE SHOP and JOE'S WINE CO., a New York Corporation; and DOES 1-10, inclusive, | <u>COMPLAINT</u> |
| Defendants. | |

Plaintiff Trader Joe's Company ("Trader Joe's"), by and through its undersigned counsel, for its Complaint against Defendant Joes Wine Inc. d/b/a/ Joe's Wine Shop and Joe's Wine Co. ("Defendant") and Defendants Does 1-10 ("Does 1-10"), hereby alleges, on knowledge as to its own conduct and otherwise on information and belief, as follows:

<u>NATURE OF THIS ACTION</u>

1.      This action arises out of Defendant's willful and blatant violation of Trader Joe's intellectual property rights in its famous TRADER JOE'S® trademarks and trade dress in violation of the Lanham Act and New York state law.  Defendant and Does 1-10 acting in concert with it, being fully aware of Trader Joe's rights in and to the TRADER JOE'S® trademarks and trade dress, seek to misappropriate those rights by opening a knock-off wine store called "Joe's Wine Co." (or "Joe's Wine Shop," according to records with the New York State Liquor Authority) located at 113 3rd Ave., New York, New York 10003 (the "Infringing Store").  Critically, this location is less than one block away from a Trader Joe's store at 142 East 14th St. and the former location of Trader Joe's *Trader Joe's Wine Shop*, at 138 East 14th St.,

which served hundreds of thousands of customers and sold millions of dollars of wine from 2006 to 2022. It is also near another Trader Joe's location at 436 East 14th Street.

2.      Due to the striking similarity of its name and other elements to Trader Joe's trademarks and trade dress and the store's close proximity to these Trader Joe's stores, the Infringing Store is misleading to customers and is being marketed in a way that implies endorsement and affiliation by Trader Joe's and will likely cause confusion with the Trader Joe's trademarks and trade dress.

3.      Indeed, Defendant is actively courting consumer confusion. In addition to selecting a confusingly similar name for its store, Defendant has infringed Trader Joe's famous and valuable trademarks and trade dress—including through its use of a circular logo, color scheme, and wood paneling similar to Trader Joe's distinctive trademarks and trade dress—to ape the look of a Trader Joe's store:

**Defendant's Infringing Store at 113 3rd Ave. (August 2024)**



4.     The Infringing Store will lessen the capacity of the famous and distinctive Trader Joe's trademarks and trade dress to distinguish Trader Joe's products and services from those of others, and it will dilute and tarnish the distinctive quality of the famous and distinctive Trader Joe's trademarks and trade dress.

5.     In September 2024, after months spent trying to amicably resolve this dispute, Trader Joe's was prepared to file a lawsuit to protect its valuable trademark rights.  Trader Joe's refrained from filing suit after Defendant removed its infringing "Joe's Wine Co." name and signage (after Trader Joe's sent it a draft complaint and explained Trader Joe's legal position), and repeatedly assured Trader Joe's that it was selecting a new name and branding.  Despite these representations, on or about November 14, 2024, Defendant resumed using the name "Joe's Wine Co." and wood paneling similar to Trader Joe's trade dress on its store signage:

**Defendant's Infringing Store at 113 3rd Ave. (November 2024)**



6.     Defendant's continued infringement has compelled Trader Joe's to bring this action to protect its valuable trademarks and trade dress from further injury.  Defendant's wrongful actions create a risk of serious damage to the substantial reputation and goodwill that Trader Joe's has carefully cultivated in its brand and trademarks for more than 50 years.  Accordingly, Trader Joe's seeks injunctive relief and monetary damages for Defendant's

trademark infringement, false designation of origin, false advertising, unfair competition, and

trademark dilution under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), 1125(c), and related New

York state law.

7.     Defendant's wrongful actions have produced, and unless enjoined by this Court,

will continue to produce a likelihood of consumer confusion and dilution of Trader Joe's

trademarks, causing irreparable harm to customers and Trader Joe's.

## <u>THE PARTIES</u>

8.     Trader Joe's is a California corporation with its principal place of business at 800

South Shamrock Avenue, Monrovia, California 91016.  Trader Joe's is engaged in the business

of selling high-quality groceries at low prices, including thousands of its own products under the

TRADER JOE'S® brand label.  Trader Joe's owns numerous federally registered and common-

law trademarks associated with its retail grocery chain and its products.

9.     Upon information and belief, Defendant Joe's Wine Inc. is a New York

corporation established in January 2024 with a mailing address of 1305 President Street,

Brooklyn, New York 11213.  Although current signage at Defendant's Infringing Store identifies

it as "Joe's Wine Co," it has filed paperwork with the state liquor authority stating that it intends

to operate under the name "Joe's Wine Shop."

10.     Trader Joe's is unaware of the names and true capacities of Defendants Does 1-

10, and therefore sues them by their fictitious names.  Upon information and belief, discovery

will reveal the true identities and specific conduct of those defendants and Trader Joe's will then

amend this Complaint to identify them by name.  Trader Joe's alleges that Does 1-10 participated

in the misconduct alleged herein and are therefore liable for the same.  Trader Joe's further

alleges that, at all times, each Doe defendant was acting as an agent, partner, joint venturer,

integrated enterprise, or alter ego of each of the other defendants and each were co-conspirators

with respect to the wrongful conduct alleged herein such that each is responsible for the acts of the other. Moreover, Does 1-10 not only participated in the infringing acts alleged herein, but each was a moving, active, and conscious force behind Defendant's and the other defendants' decision to engage in the infringing acts, or otherwise caused the infringement to occur.

## JURISDICTION AND VENUE

11.    This action asserts claims arising under the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a) and 1125(c), and related claims under the laws of the State of New York. This Court has subject matter jurisdiction over the federal trademark infringement and unfair competition claims pursuant to 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331, 1338(a) and 1338(b). This Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367, because those claims are related to and arise from the same set of facts as Trader Joe's federal claims.

12.    This Court has personal jurisdiction over Defendant because, *inter alia*, Defendant resides and transacts business in the State of New York, engages in a persistent course of conduct in the State of New York, expects or reasonably should expect its acts to have legal consequences in the State of New York, and Defendant's acts have caused harm and continue to cause harm to Trader Joe's in the State of New York.

13.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because Defendant resides in this judicial District, a substantial part of the events giving rise to the claims asserted in this action occurred in this judicial District, Defendant expects or reasonably should expect its acts to have legal consequences in this judicial District, and Defendant's acts have caused harm and continue to cause harm to Trader Joe's in this judicial District.

## GENERAL ALLEGATIONS

### A.    The Trader Joe's Story

14.    Trader Joe's, now one of the most popular grocery retailers in the United States,

started as a local Los Angeles-area business over 50 years ago. In 1958, Joe Coulombe opened a small but successful chain of convenience stores in the Los Angeles area called "Pronto Markets."

15.    Over the next several years, Coloumbe completely redesigned Pronto Markets, and by 1967, his renamed "Trader Joe's" stores were offering a larger grocery selection, as well as a variety of wines, against the backdrop of the company's now famous "South Pacific" store design.

16.    In March 2006, Trader Joe's opened its first New York City store at 142 East 14th Street. That same year, Trader Joe's opened its first and only store dedicated to wine, Trader Joe's Wine Shop, next door at 138 East 14th Street. These stores quickly became popular.

**Trader Joe's Wine Shop (138 E. 14th Street)**



17.    In 2024, Trader Joe's launched a grab-and-go store, Trader Joe's Pronto, at the former location of Trader Joe's Wine Shop at 138 East 14th Street, which Trader Joe's had closed two years earlier.

**Trader Joe's Pronto (138 E. 14th Street)**



18.    Since opening its first store in Manhattan in 2006, Trader Joe's has expanded throughout the area and currently operates ten stores in Manhattan, including an additional store just three blocks away from the Infringing Store, at 436 East 14th Street.

19.    Trader Joe's has always prided itself on its carefully chosen and unique food and

beverage selection. Today, the name "Trader Joe's" is synonymous with high-quality, affordable groceries and alcohol, and there are approximately 575 Trader Joe's stores in the United States. The widespread success of Trader Joe's is due in large part to its carefully cultivated reputation; the unique, customer service-focused shopping experience it offers its customers; and its innovative, high-quality, and affordable products.

> **B.**    **Trader Joe's Intellectual Property Rights**

20.    The United States Patent and Trademark Office ("USPTO") has granted Trader Joe's Trademark Registration No. 2,171,157 for the trademark TRADER JOE'S for "retail store services in the field of specialty foods and beverages" in International Class 42. This registration is valid, subsisting, and incontestable pursuant to 15 U.S.C. § 1065.

21.    The USPTO has also granted Trader Joe's Trademark Registration No. 4,001,531 for the trademark TRADER JOE'S for "retail grocery services" in International Class 35. This registration is valid, subsisting and incontestable pursuant to 15 U.S.C. § 1065.

22.    The USPTO has also granted Trader Joe's Trademark Registration No. 5,221,626 for a design mark featuring the words TRADER JOE'S as part of a distinctive circle design logo for "retail grocery services," among other goods, in International Class 35. This registration is valid, subsisting and incontestable pursuant to 15 U.S.C. § 1065. For nearly thirty years, Trader Joe's has frequently displayed this mark on its paper bags and tote bags, as well as in store displays. Trader Joe's also owns trademark rights in several other circle-shaped logos.



| Examples of Trader Joe's Use of Registration No. 5,221,626 |
| --- |

 



**Examples of Trader Joe's Use of Registration No. 5,221,626**







| Examples of Trader Joe's Use of Registration No. 5,221,626 |
|---|

 

23.     The USPTO has also granted Trader Joe's Trademark Registration No. 4,001,533 for a design mark featuring the words TRADER JOE'S for "retail grocery services," among other goods, in International Class 35.  This registration is valid, subsisting and incontestable pursuant to 15 U.S.C. § 1065.  For nearly thirty years, Trader Joe's has frequently displayed this mark in its stores and on its grocery bags and products, as shown below.

| U.S. Trademark Registration No. 4,001,533 |
|---|
| **TRADER JOE'S** |

| Examples of Trader Joe's Use of Registration No. 4,001,533 |
|---|



24.     Trader Joe's also uses its TRADER JOE'S trademark on a wide variety of the food, beverage, health and beauty, and household products it sells.  Trader Joe's has obtained numerous United States trademark registrations for the mark TRADER JOE'S for food and beverage products, and other items.

25.     Trader Joe's trademark registrations include Registration No. 1,421,383 in International Class 33 for wine and other alcoholic beverages.  This registration is valid, subsisting, and incontestable pursuant to 15 U.S.C. § 1065.  Indeed, wine—and specifically affordable and high-quality wine—has always been a product category closely associated with Trader Joe's.  Since 1967, Trader Joe's has sold a wide selection of affordable wines in stores where it is legally able to do so.  Many Trader Joe's stores have wine selections that are so vast

that they are treated as a "store within a store." The images below show such Trader Joe's wine store areas.

| Example of Trader Joe's Wine Selections |
| --- |





26.    Because grocery stores in the state of New York are not permitted to sell wine or liquor, in 2006, Trader Joe's opened a dedicated wine store, Trader Joe's Wine Shop, at 138 East

14th Street.  Trader Joe's closed Trader Joe's Wine Shop in 2022, but it intends to open a new

Trader Joe's Wine Shop in New York.

27.     Trader Joe's has also obtained numerous United States trademark registrations for

marks that play off the famous TRADER JOE'S name, including JOE'S DINER for "frozen

food, namely macaroni and cheese" (Registration No. 6,910,938) and JOE'S KIDS for "fruit

juices" (Registration No. 2,923,911).  Each of these registrations is valid and subsisting, and the

JOE'S KIDS registration is incontestable pursuant to 15 U.S.C. § 1065.  Trader Joe's has also

acquired common law rights in unregistered marks with playful variations on the TRADER

JOE'S mark through use in commerce throughout the United States.  For example, for decades,

Trader Joe's has sold cookies under the mark JOE-JOE'S.  Through these registered and

unregistered marks, Trader Joe's has established a "family of marks" that builds further goodwill

in the famous TRADER JOE'S mark and brand.

| JOE-JOE'S | JOE'S DINER |
|---|---|
|  | |

28.     Trader Joe's federal trademark registrations for its trademarks were duly and

legally issued, are valid and subsisting, and constitute *prima facie* evidence of Trader Joe's

exclusive ownership of the trademarks.  True and correct copies of these and other Trader Joe's

trademark registrations are attached hereto as **Exhibit 1**.  All of Trader Joe's trademarks

discussed *supra* are referred to collectively as the "Trader Joe's Trademarks."  Trader Joe's has

also acquired common law rights in the Trader Joe's Trademarks through consistent use in commerce throughout the United States.

29.     Trader Joe's has invested significant time, money, and effort in advertising, promoting, and developing the Trader Joe's Trademarks.  Trader Joe's promotes its products through carefully curated channels.  It produces a newsletter, "The Fearless Flyer," which is distributed at Trader Joe's stores and emailed to more than 975,000 customers throughout the United States.  Trader Joe's also advertises on its podcast, various social media platforms, and on its website, www.traderjoes.com.  The Trader Joe's website receives over 5 million visitors monthly even though customers cannot place orders there, a testament to the popularity of its brand.  The website offers information about Trader Joe's products, stores, and its commitment to the community.

30.     Rather than adopt an ordinary décor common to many supermarkets, Trader Joe's has chosen to adopt a distinctive décor featuring a combination of elements, including, *inter alia*, cedar planks on the walls, hand-drawn and hand-painted signs and murals, and tropical and floral elements evocative of the South Pacific.  Trader Joe's also frequently uses imagery and iconography evocative of the late 1800s and early 1900s in its hundreds of stores, in the Fearless Flyer and other marketing materials, and on its website, including images of food and beverages in the style of decades-old lithographs or woodcut art.  These distinctive design elements are referred to collectively as the "Trader Joe's Trade Dress."

31.     Trader Joe's has established substantial goodwill and widespread recognition in the Trader Joe's Trademarks and Trader Joe's Trade Dress, and they have become associated exclusively with Trader Joe's and its products by both customers and potential customers.  They have also achieved great fame both within and outside the United States.

## DEFENDANT'S INFRINGEMENT AND DILUTION OF
## TRADER JOE'S INTELLECTUAL PROPERTY RIGHTS

32.     From 2015 to 2020, a wine store operated near the address of the Infringing Store at 50 Third Ave., New York, New York under the name "Taste Wine Co."

33.     In November 2023, the New York State Liquor Authority issued a liquor license for 113 3rd Ave.—the address of the Infringing Store—to Taste Wine LLC DBA Taste Wine Co.

34.     On information and belief, in 2023 or 2024, Defendant purchased the assets of Taste Wine LLC and, rather than re-open the store under its existing name, elected to change the name of the Infringing Store from Taste Wine to "Joe's Wine Co" (or "Joe's Wine Shop").

35.     Upon information and belief, the Infringing Store was renovated and renamed to make it appear similar to a Trader Joe's store, and specifically to Trader Joe's Wine Shop.   As shown in the photographs below, Defendant decorated the outside of the Infringing Store with signs, banners, and wood paneling, creating a decoration scheme that mimics the famous name and trade dress of Trader Joe's stores.  Defendant also advertised that it would sell "100 WINES UNDER $12!"—*i.e.*, at similar prices to Trader Joe's wine offerings.



**Defendant's Infringing Store (August 2024)**

| Defendant's Infringing Store (August 2024) |
| --- |



| Defendant's Infringing Store (November 2024) |
| --- |



36.    Even before Defendant's store opened to the public, it caused a substantial amount of customer confusion.  For example, Trader Joe's Crew Members received dozens of inquiries from customers who were confused into falsely believing that the Infringing Store was owned or operated by or affiliated with Trader Joe's.  Additionally, a news article noted that the Infringing Store "bears an uncanny resemblance to the former wine shop according to passersby," and included quotes from a New York resident who "thought that Joe's Wine Co. was part of Trader Joe's."  The article quoted this resident as saying: "I thought [Trader Joe's was] just splitting it up from previous location and moving it over here.  I mean, it looks the same, really with the fonts and the colors, plus it was pretty inexpensive."  This article, which is available online at https://www.chelseanewsny.com/news/joe-s-wine-co-to-open-a-minute-away-from-former-trader-joe-s-wine-shop-on-e-14th-st-IA3570875, is attached hereto as **Exhibit 2.** Defendant's current storefront is continuing to cause significant consumer confusion.

37.    Defendant has never been authorized, licensed, or otherwise granted permission by Trader Joe's to use the Trader Joe's Trademarks or the Trader Joe's Trade Dress, or any other intellectual property of Trader Joe's, in connection with the advertisement, offer for sale, and/or sale of any goods and/or services.

38.    Trader Joe's has previously contacted Defendant about its infringing and harmful conduct.  Indeed, Defendant has repeatedly represented that it would stop using its infringing "Joe's Wine Co." name and elements (*e.g.*, wood paneling) evocative of Trader Joe's trade dress, and did in fact take corrective actions to remove infringing signage from its storefront. Defendant therefore is aware that its activities constitute trademark infringement and dilution under federal and state law.  Despite these repeated warnings, Defendant has continued to engage in its infringing activities.

39.    Defendant's actions have and will continue to confuse customers at the time of

initial interest, point of sale, and in the post-sale setting to mistakenly believe Defendant's products originate from, are associated with, and/or are approved by Trader Joe's.

40.     Upon information and belief, at all times relevant hereto, Defendant has had full knowledge of Trader Joe's ownership of the Trader Joe's Trademarks and Trader Joe's Trade Dress, including its exclusive right to use and authorize use of such intellectual property and its associated goodwill.

41.     Defendant has copied and otherwise misappropriated the Trader Joe's Trademarks and Trader Joe's Trade Dress, and related intellectual property, in an effort to exploit Trader Joe's reputation in the market.  Upon information and belief, Defendant has engaged in its infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Trader Joe's rights for the purpose of trading off the goodwill and reputation of Trader Joe's.  If Defendant's willful infringing activities are not preliminarily and permanently enjoined by this Court, Trader Joe's and the public will continue to be damaged.

**FIRST CAUSE OF ACTION**
**(Federal Trademark Infringement, 15 U.S.C. § 1114)**

42.     Trader Joe's repeats, realleges, and incorporates herein by reference the allegations in the foregoing paragraphs as if fully set forth herein.

43.     Trader Joe's engages in interstate activities to promote its goods and services using its registered trademarks, as well as the goodwill associated with said trademarks, throughout the United States.

44.     Trader Joe's registered trademarks have been, and will continue to be, known throughout the United States as identifying and distinguishing Trader Joe's products and services.

45.     Trader Joe's registered trademarks have been registered with the USPTO, are

valid and subsisting, and are in full force and effect.

46.    Defendant's unauthorized and willful use of copies, variations, reproductions, simulations, or colorable imitations of Trader Joe's federally registered trademarks in connection with the advertising, marketing, promotion, and intended operation of the Infringing Store constitutes use in commerce.  Such use infringes Trader Joe's exclusive rights in its federally registered trademarks, explicitly misleads as to the source or sponsorship of the Infringing Store, and has caused and is likely to cause confusion, mistake, or deception as to the source of the Infringing Store.

47.    The aforementioned acts of Defendant constitute trademark infringement in violation of 15 U.S.C. § 1114.

48.    Upon information and belief, Defendant's actions are deliberate and intended to confuse the public as to the source of Defendant's goods or services, to injure Trader Joe's, and to reap the benefit of Trader Joe's goodwill associated with its brand and trademarks.

49.    As a direct and proximate result of Defendant's infringing activities, Trader Joe's has been injured and will continue to suffer injury to its business and reputation unless Defendant is restrained by this Court from infringing Trader Joe's registered trademarks.

50.    Trader Joe's has no adequate remedy at law and is entitled to preliminary and permanent injunctive relief prohibiting Defendants from using Trader Joe's registered trademarks, or any marks identical and/or confusingly similar to said trademarks, for any purpose.

51.    Trader Joe's is also entitled to recover from Defendant, *inter alia*: all damages that Trader Joe's has sustained and will sustain as a result of Defendant's infringing acts; all gains, profits and advantages obtained by Defendant as a result thereof, in an amount not yet known; and the costs of this action and attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## SECOND CAUSE OF ACTION
### (False Designation of Origin / False Advertising / Unfair Competition, 15 U.S.C. § 1125(a))

52.    Trader Joe's repeats, realleges, and incorporates herein by reference the allegations in the foregoing paragraphs as if fully set forth herein.

53.    Trader Joe's engages in interstate activities to promote its goods and services using the Trader Joe's Trademarks and Trader Joe's Trade Dress, as well as the goodwill associated with the Trader Joe's Trademarks and Trader Joe's Trade Dress, throughout the United States.

54.    The Trader Joe's Trademarks and Trader Joe's Trade Dress have been, and will continue to be, known throughout the United States as identifying and distinguishing Trader Joe's products and services.

55.    Through use of the misleading "Joe's Wine" mark and the signage and decoration scheme of the Infringing Store, Defendant has knowingly and intentionally misrepresented and falsely designated to the general public the affiliation, connection, association, origin, source, sponsorship, endorsement, and approval of the Infringing Store, and intends to misrepresent and falsely designate to the general public the affiliation, connection, association, origin, source, approval, endorsement, or sponsorship of the Infringing Store, so as to create a likelihood of confusion by the public as the affiliation, connection, association, origin, source, approval, endorsement, and/or sponsorship of the Infringing Store.  In so doing, Defendant has misrepresented and is misrepresenting the nature, characteristics, and qualities of its goods and services in violation of 15 U.S.C. § 1125(a).

56.    Defendant is further violating 15 U.S.C. § 1125(a) by falsely designating the origin of its goods and services, and/or falsely representing sponsorship by, affiliation with, or connection to Trader Joe's and its goods and services.

57.     Upon information and belief, Defendant's actions are deliberate and intended to confuse the public as to the source of Defendant's goods or services, to injure Trader Joe's, and to reap the benefit of Trader Joe's goodwill associated with its brand and trademarks.

58.     As a direct and proximate result of Defendant's infringing activities, Trader Joe's has been injured and will continue to suffer injury to its business and reputation unless Defendant is restrained by this Court from infringing the Trader Joe's Trademarks and Trader Joe's Trade Dress.

59.     Trader Joe's has no adequate remedy at law and is entitled to preliminary and permanent injunctive relief prohibiting Defendants from using the Trader Joe's Trademarks and Trader Joe's Trade Dress, or any marks and/or dress identical and/or confusingly similar to the Trader Joe's Trademarks and Trader Joe's Trade Dress, for any purpose.

60.     Trader Joe's is also entitled to recover from Defendant, *inter alia*: all damages that Trader Joe's has sustained and will sustain as a result of Defendant's infringing acts; all gains, profits and advantages obtained by Defendant as a result thereof, in an amount not yet known; and the costs of this action and attorneys' fees pursuant to 15 U.S.C. § 1117(a).

### THIRD CAUSE OF ACTION
**(Federal Trademark Dilution, 15 U.S.C. § 1125(c))**

61.     Trader Joe's repeats, realleges, and incorporates herein by reference the allegations in the foregoing paragraphs as if fully set forth herein.

62.     The Trader Joe's Trademarks are individually and collectively famous in the United States.

63.     Defendant's use of copies, variations, reproductions, simulations or colorable imitations of the Trader Joe's Trademarks in connection with the Infringing Store will lessen the capacity of Trader Joe's famous and distinctive trademarks to designate Trader Joe's retail stores

and products.

64.    Defendant has diluted and will continue to dilute and tarnish the distinctive quality of Trader Joe's famous and distinctive trademarks.

65.    The aforesaid acts of Defendant constitute dilution by blurring by whittling away the distinctiveness of Trader Joe's famous marks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

66.    The aforesaid acts of Defendant also constitute dilution by tarnishment in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

67.    Upon information and belief, Defendant's dilution of the Trader Joe's Trademarks has been deliberate, intentional, and willful.

68.    As a direct and proximate result of the foregoing acts of Defendant, Trader Joe's has been damaged and has suffered and will continue to suffer immediate and irreparable injury.

69.    Trader Joe's has no adequate remedy at law and is entitled to preliminary and permanent injunctive relief.

70.    Due to Defendant's willful dilution of the Trader Joe's Trademarks, Trader Joe's is also entitled to recover from Defendant, *inter alia*: all damages that Trader Joe's has sustained and will sustain as a result of Defendant's infringing acts; all gains, profits and advantages obtained by Defendant as a result thereof, in an amount not yet known; and the costs of this action and attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## FOURTH CAUSE OF ACTION
### (Common Law Trademark Infringement)

71.    Trader Joe's repeats, realleges, and incorporates herein by reference the allegations in the foregoing paragraphs as if fully set forth herein.

72.    Trader Joe's owns and enjoys common law trademark rights in the Trader Joe's

Trademarks and Trader Joe's Trade Dress throughout the United States, including but not limited to in the State of New York.

73.     Defendant's infringing activities in appropriating rights in the Trader Joe's Trademarks and Trader Joe's Trade Dress are intended to capitalize on the goodwill of the Trader Joe's Trademarks and Trader Joe's Trade Dress for the purpose of Defendant's own pecuniary gain.  Trader Joe's has expended substantial time, resources, and efforts to develop the goodwill and reputation of its brand, its Trademarks, and its Trade Dress.  As a result of Trader Joe's efforts, Defendant is now unjustly enriched and benefitting from intellectual property rights that rightfully and exclusively belong to Trader Joe's.

74.     Defendant's infringing use of the Trader Joe's Trademarks and Trader Joe's Trade Dress is without Trader Joe's permission or authority and in willful and wanton disregard of Trader Joe's rights to control its reputation and intellectual property.

75.     Defendant's unauthorized use of the Trader Joe's Trademarks and Trader Joe's Trade Dress has caused and is likely to cause confusion as to the source of Defendant's goods and/or services, all to the detriment of Trader Joe's.

76.     Defendant's wrongful actions are willful, deliberate, and intended to confuse the public and/or injure Trader Joe's.

77.     Trader Joe's has been irreparably harmed and will continue to be irreparably harmed as a result of Defendant's aforementioned infringing activities, unless Defendant is preliminarily and permanently enjoined by this Court.

78.     As a result of Defendant's actions alleged herein, Trader Joe's is entitled to preliminary and permanent injunctive relief.  Additionally, Trader Joe's is entitled to recover, *inter alia*: all damages that Trader Joe's has sustained and will sustain as a result of Defendant's infringing acts; all gains, profits and advantages obtained by Defendant as a result thereof, in an

amount not yet known; and exemplary or punitive damages for Defendant's intentional, willful, and wanton misconduct.

## FIFTH CAUSE OF ACTION
### (Common Law Unfair Competition)

79.    Trader Joe's repeats, realleges, and incorporates herein by reference the allegations in the foregoing paragraphs as if fully set forth herein.

80.    Defendant's wrongful actions are intended to capitalize on the goodwill associated with the Trader Joe's Trademarks and Trader Joe's Trade Dress for the purpose of Defendant's own pecuniary gain.  Trader Joe's has expended substantial time, resources, and efforts to develop the goodwill and reputation of its brand, its Trademarks, and its Trade Dress. As a result of Trader Joe's efforts, Defendant is now unjustly enriched and benefitting from intellectual property rights that rightfully and exclusively belong to Trader Joe's.

81.    Defendant's infringing use of the Trader Joe's Trademarks and Trader Joe's Trade Dress is without Trader Joe's permission or authority and in willful and wanton disregard of Trader Joe's rights to control its reputation and intellectual property.

82.    Defendant's unauthorized use of the Trader Joe's Trademarks and Trader Joe's Trade Dress has caused and is likely to cause confusion as to the source of Defendant's goods and/or services, all to the detriment of Trader Joe's.

83.    Defendant's wrongful actions were willful, deliberate, and intended to confuse the public and/or injure Trader Joe's.

84.    Trader Joe's has been irreparably harmed and will continue to be irreparably harmed as a result of Defendant's aforementioned infringing activities, unless Defendant is preliminarily and permanently enjoined by this Court.

85.    As a result of Defendant's actions alleged herein, Trader Joe's is entitled to

preliminary and permanent injunctive relief.  Additionally, Trader Joe's is entitled to recover, *inter alia*: all damages that Trader Joe's has sustained and will sustain as a result of Defendant's infringing acts; all gains, profits and advantages obtained by Defendant as a result thereof, in an amount not yet known; and exemplary or punitive damages for Defendant's intentional, willful, and wanton misconduct.

## SIXTH CAUSE OF ACTION
### (Injury to Business Reputation and Dilution, New York General Business Law § 360-1)

86.     Trader Joe's repeats, realleges, and incorporates herein by reference the allegations in the foregoing paragraphs as if fully set forth herein.

87.     Defendant's use of copies, variations, reproductions, simulations, or colorable imitations of the Trader Joe's Trademarks and Trader Joe's Trade Dress in connection with the Infringing Store will lessen the capacity of Trader Joe's famous and distinctive trademarks and trade dress to distinguish Trader Joe's products and services from those of others, and has and will dilute and tarnish the distinctive quality of Trader Joe's famous and distinctive trademarks and trade dress.

88.     The aforementioned acts of Defendant constitute dilution by blurring by whittling away the distinctiveness of Trader Joe's famous marks and dilution by tarnishment in light of Defendant's unknown reputation for retail wine services in New York and an injury to Trader Joe's business reputation and dilution of its trademarks and trade dress under Section 360-1 of the General Business Law of New York.

89.     As a direct and proximate result of the foregoing acts, Defendant has unlawfully derived, and will continue to derive, income, profits, and goodwill from its activities and Trader Joe's has been damaged and has suffered and will continue to suffer immediate and irreparable injury for which Trader Joe's has no adequate remedy at law.

## SEVENTH CAUSE OF ACTION
### (Promissory Estoppel)

90.    Trader Joe's repeats, realleges, and incorporates herein by reference the allegations in the foregoing paragraphs as if fully set forth herein.

91.    Through its counsel, Defendant made a clear and unambiguous promise to Trader Joe's to remove its infringing "Joe's Wine Co." name and signage and to select a new name and branding.  Upon information and belief, this promise was made on Defendant's behalf pursuant to the express, implied, or apparent authority conferred by Defendant upon its counsel.

92.    Trader Joe's reasonably and foreseeably relied upon Defendant's promise by refraining from filing suit in September 2024.

93.    As a result of Trader Joe's reasonable and foreseeable reliance on Defendant's promise to remove its infringing "Joe's Wine Co." name and signage and to select a new name and branding, Trader Joe's has sustained damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Trader Joe's Company hereby demands judgment in its favor and against Defendant Joes Wine Inc. d/b/a/ Joe's Wine Shop and Joe's Wine Co. as follows:

A.    A Judgment in favor of Trader Joe's and against Defendant as to each of the above Causes of Action;

B.    A Judgment that Defendant has infringed and diluted the Trader Joe's Trademarks and Trader Joe's Trade Dress and that said infringement and dilution were willful;

C.    An Order granting permanent injunctive relief restraining and enjoining Defendant, its agents, servants, employees, officers, associates, attorneys, and all persons acting by, through, or in concert with any of them from infringing or diluting the Trader Joe's Trademarks and Trader Joe's Trade Dress, including but

not limited to by continuing to operate, manage, market, advertise, promote, or accept customers for the Infringing Store;

D.    An Order requiring Defendant to file with this Court and to serve on Trader Joe's within ten (10) days after issuance of an injunction, a report in writing, under oath, setting forth in detail the manner and form in which Defendant has complied with the injunction;

E.    An Award to Trader Joe's of:

   a.    Three (3) times Trader Joe's damages or Defendant's profits, whichever is greater, as well as costs of suit pursuant to 15 U.S.C. § 1117(a);

   b.    Trader Joe's reasonable attorneys' fees and costs in bringing this action, pursuant to 15 U.S.C. § 1117(a);

   c.    Punitive and exemplary damages in connection with Trader Joe's claims under New York law;

   d.    Damages based on promissory estoppel, in an amount to be determined at trial;

   e.    Pre-judgment and post-judgment interest in the maximum amount allowable under the law; and

   f.    Trader Joe's costs incurred in bringing this action;

F.    For such other and further relief as the Court may deem just, equitable, and proper.

Dated:  November 20, 2024                   Respectfully Submitted,

                                            KUBLANOVSKY LAW LLC

                                            By:
                                            Eugene D. Kublanovsky, Esq.
                                            Erik Dykema, Esq.
                                            10 East 39th St., 12th Floor
                                            New York, NY 10016
                                            Tel: (212) 729-4707
                                            Email: eugene@edklaw.com
                                                    erik@edklaw.com

                                            Jordan Raphael, Esq.
                                            (*Pro Hac Vice Forthcoming*)
                                            Tim Byron, Esq.
                                            (*Pro Hac Vice Forthcoming*)
                                            BYRON RAPHAEL LLP
                                            811 Wilshire Blvd., 17th Floor
                                            Los Angeles, CA  90017
                                            Telephone: (213) 291-9800
                                            Facsimile: (213) 377-5771
                                            jraphael@byronraphael.com

                                            ***Attorneys for Plaintiff***
                                            ***Trader Joe's Company***

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Trader Joe's Company hereby demands a trial by jury of all claims in this litigation.

Dated:  November 20, 2024                    Respectfully Submitted,

                                             KUBLANOVSKY LAW LLC

                                             By: _____
                                             Eugene D. Kublanovsky, Esq. (EK 0605)
                                             10 East 39th St., 12th Floor
                                             New York, NY 10016
                                             Tel: (212) 729-4707
                                             Fax: (914) 828-0227
                                             Email: eugene@edklaw.com

                                             Jordan Raphael, Esq.
                                             (*Pro Hac Vice Forthcoming*)
                                             Tim Byron, Esq.
                                             (*Pro Hac Vice Forthcoming*)
                                             BYRON RAPHAEL LLP
                                             811 Wilshire Blvd., 17th Floor
                                             Los Angeles, CA  90017
                                             Telephone: (213) 291-9800
                                             Facsimile: (213) 377-5771
                                             jraphael@byronraphael.com

                                             *Attorneys for Plaintiff*
                                             *Trader Joe's Company*