**ALFRED W ZAHER** Partner

alfred@zaherli.com

November 27, 2024

VIA Email and ECF

Honorable Lewis J. Liman
United States District Court for the
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
Courtroom 15C
New York, NY 10007

      Re:    *Trader Joe's Company v. Joes Wine Inc. et al.*
                   Case No. 1:24-cv-08835-LJL

Dear Judge Liman,

We are counsel for Defendant Joe's Wine Inc. ("Defendant" d/b/a "Joe's Wine Co.") in the above-referenced lawsuit. We were retained for this matter late Monday evening and we secured local counsel in New York last night. Counsel for Defendant is at a distinct disadvantage prejudicing our client by having only 24 hours to review, digest and respond to a voluminous pleading literally overnight. We will do our best to respond, however we ask the Court to allow us to file supplemental briefing before the hearing now reset for Tuesday, December 3 at 3 PM. Counsel for defendant secured local New York counsel for this matter yesterday evening, Mark Sadaka, Esq. of Sadaka Law, from which this letter will be emailed and filed by ECF today.

Plaintiff, Trader Joe's Company ("Plaintiff" or "Trader Joe's"), in the above-referenced commenced the instant action on November 20, 2024, by filing a Complaint [Dkt No. 1] and an *Ex Parte* application for an Order to Show Cause seeking temporary and preliminary injunctive relief against Defendant [Dkt Nos. 7-8] (the "TRO/PI Application").

That same day, Your Honor issued an order ("Order") setting a briefing Schedule, requiring Plaintiff to serve Defendant or Defendant's counsel with a copy Plaintiff's TRO/PI Application and the Order on or before November 22, 2024.

Counsel for Defendant did not have a copy of the complaint and the *Ex Parte* application for an Order to Show Cause seeking temporary and preliminary injunctive until 9 PM on Monday, November 25, after the time set by the Order with 24 hours to respond to an extensive pleading. Counsel for Defendant does not have sufficient time to provide a complete response and hereby requests additional time to submit a supplemental pleading prior to the hearing now reset in this matter for Tuesday December 3.

**MARKS IN DISPUTE**

The dispute here is between Plaintiff's Mark and the Defendant's mark.

Plaintiff's mark is TRADER JOE'S in stylized form for retail groceries (not wines and spirits) as shown below, and presented in red in this dispute and so referenced in the survey.

# TRADER JOE'S



Defendants mark is JOE'S WINE CO for retail wines and spirits (not groceries) used in plain block letter format in gold with a dark brown background as shown below.



As is plainly shown, Plaintiff's mark is not JOE or JOES or JOE'S, and certainly not JOE'S WINE CO. In addition, the use of the term JOE was selected by Defendant because it is the

given name of one of the principals of the Defendant given to him in honor of a famous 15th century philosopher ancestor.

Even more relevant, there are several hundred uses of JOE and variants, such as JOE or JOES or JOE'S as business names and trademarks by as many third parties for all kinds of goods and services, including groceries, pizza, restaurants, pubs, bars, coffee shops, liquor and wine stores, within the New York City area alone, as shown in Exhibit 1.  Further, there are 426 subsisting live U.S. Trademark Registrations, including the terms JOES or JOE'S, in many different classifications of goods and services in the relevant classification here, including retail food products, delicatessens, coffee shops and other purveyors of food and drink all by many different third parties, as shown in Exhibit 2.

A trademark is a device, term or terms that are used and considered in their totality and cannot be considered by any one individual element to identify the source and origin of a good or service. Plaintiff's mark is clearly TRADER JOE'S. It is undeniable that the dominant feature of the mark is "TRADER" which Plaintiff cannot now disregard as a key and important element in each of Plaintiff's trademarks (registered or otherwise).

This exact point was made by Plaintiff in a prior unrelated litigation. In a prior TRO brought by Plaintiff against Gristede's, cited in the Gristede's Transcript by Plaintiff in its Memorandum of Law In Support of Its Ex Parte Application For A Temporary Restraining Order at p. 13.  "Ex. 6 (Gristede's TRO transcript) at 43 the court in that case made a "(finding TRADER JOE'S and GRISTEDE'S TRADER JOHN'S similar despite differences)." Plaintiff knows that its mark is TRADER JOE'S not JOE'S as it seems to allege here.

It must be noted that Plaintiff has never successfully asserted the element "JOE'S" in litigation, nor has it filed for or obtained U.S. Trademark protection for the mark "JOE'S" among the plethora of trademarks registrations it has to date.  This is an important fact at issue here.

## EZELL SURVEY EXPERT REPORT

Plaintiff's survey evidence is false, because it used a banner that was never used in commerce by the Defendant. Looking at the Ezell Expert Report procured by Plaintiff, on p 14, Para. 27, Mr. Ezell lists 6 causal nexuses for a likelihood of confusion:

1. Name "Joe's"

2. Circular logo (*Not an element of Defendant's mark*)

3. Red color motif (*Not an element of Defendant's mark*)

4. Wood paneling (*Not an element of Defendant's mark*)

5. Floral patterns (*Not an element of Defendant's mark*)

6. Line art drawings (*Not an element of Defendant's mark*)

Again, Plaintiff's mark is TRADER JOE'S, and Defendants mark is JOE'S WINE CO, used in block letters in gold on a dark background. Plaintiff's survey is entirely erroneous because it uses elements, colors and stylizations that are not at all present or used by the Defendant with its mark JOE'S WINE CO. The only element with any similarity is the name-element JOE, which is widely used by hundreds of third parties in New York City alone for all kinds of goods and services including those of the Plaintiff as shown in Exhibit 1. It is improbable to measure any possible harm, yet alone irreparable harm, success on the merits of a weak and widely used term such as JOE'S, and the balance of harm is so devastating to the Defendant by a forced stop of all use of a mark used by hundreds of others in the same vicinity.

Plaintiff has not proffered any such evidence of the elements required for an emergency TRO because it cannot, and certainly not for an emergency and drastic action such as that applied for here.

Moreover, as shown in Paragraph 28 of Ezell, it lists 28 Respondent IDs with answers as to why they thought Defendant's store was owned or operated by Trader Joe's. Of these, 14 respondents,

including RESPIDs 1006, 1015, 1016, 1027, 1039, 1053, 1102, 1103, 1118, 1131, 1139, 1153, 1172, and 1119 identified *other* bases besides, or in addition to, the name JOE'S. This means that half of those that responded based their confusion on elements that are not at all used in Defendants mark.

Therefore, Plaintiff's own survey results render a mere confusion level around 7.25 % net confusion, a level of dubious and insufficient reliability to be in any way meaningful. The survey, based solely on an erroneous use, does not present the Defendant's actual trademark use in commerce, which is all that matters. Using the survey results adjusted for the only element of similarity reduces the survey result to 7.25%, which is typicality considered to support a finding of no likelihood of confusion.

As cited in the Emory Law Journal at p. 500, EX 5.

> Importantly, in assessing consumer beliefs, trademark law recognizes that most populations of relevant consumers are not homogenous.[37] That is why the likelihood of confusion and likelihood of dilution causes of action do not require courts to find that it is likely that the entire population of relevant consumers is confused or experiencing dilution.[38] Instead, trademark law asks courts to look inside the population of relevant consumers and determine whether an appreciable proportion of that population (typically, 20–25%,[39] but sometimes as low as 15%[40]) is confused or experiencing dilution. If there is a better-than-even chance that the defendant's conduct will confuse or dilute more than that threshold proportion, then a court should find infringement.

---

FN 39: See, e.g., *McDonald's Corp. v. McBagel's, Inc.,* 649 F. Supp. 1268, 1277 (S.D.N.Y. 1986) (showing that 25% supports finding of likely confusion); *Bell v. Starbucks U.S. Brands Corp.*, 389 F. Supp. 2d 766, 776 (S.D. Tex. 2005) (finding 25% to be sufficient to show a "significant" level of actual confusion and to support a finding of

infringement), aff'd, 205 F. App'x 289 (5th Cir. 2006); see also MCCARTHY, supra note 1, § 32:188 ("Generally, figures in the range of 25% to 50% have been viewed as solid support for a finding of a likelihood of confusion. . . . **In the author's view, survey confusion numbers that go below 20% need to be carefully viewed against the background of other evidence weighing for and against a conclusion of likely confusion."**). (emphasis added)

## APPLICATION FOR TRO/PRELIMINARY RELIEF

A party seeking a preliminary injunction must show "(1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *RiseandShine Corp. v. PepsiCo, Inc.,* 41 F.4th 112, 119 (2d Cir. 2022) (quoting *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018)).

"Under the Lanham Act, a plaintiff alleging trademark infringement must demonstrate that (1) `it has a valid mark that is entitled to protection' and that (2) the defendant's `actions are likely to cause confusion with [that] mark.'" *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 84 (2d Cir. 2020) (quoting *The Sports Auth., Inc. v. Prime Hospitality Corp.,* 89 F.3d 955, 960 (2d Cir. 1996)). Further, where a mark warrants protection under the Lanham Act, "both the likelihood of success on the merits and the potential for irreparable harm in the absence of preliminary relief may be demonstrated by a showing that a significant number of consumers are likely to be misled or confused as to the source of the products in question." *RiseandShine,* 41 F.4th at 119 (quoting *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1038 (2d Cir. 1992)).

## PROTECTIONS AFFORDED TO JOE AS A PERSONAL NAME

In the Second Circuit, "personal names—both surnames and first names—are generally regarded as descriptive terms which require proof of secondary meaning" in order to receive protection. 815 *Tonawanda St. Corp. v. Fay's Drug Co.,* 842 F.2d 643, 648 (2d Cir. 1988)

In 815 *Tonawanda*, the Second Circuit established a rule that personal names are generally regarded as descriptive marks but left open the possibility that a personal name could be categorized as something other than a descriptive mark if a plaintiff makes the proper showing. Id. In 815 Tonawanda, the district court had held that the mark at issue, FAY'S, was a suggestive or fanciful mark. Id. On appeal, the Second Circuit held that the district court had erred in that categorization because the plaintiff "[had] offered no reason for [the court] to consider `Fay's' as signifying anything other than the possessive form of a woman's name." Id.; see also *Hello I Am Elliot, Inc. v. Sine,* No. 19-CV-6905 (PAE), 2020 WL 3619505, at *6 (S.D.N.Y. July 2, 2020) (*citing 815 Tonawanda*, 842 F.2d at 64748) ("[Defendant] does not allege—nor do plaintiffs argue—that the mark [at issue] refers to something other than the common first name. As such, it is properly characterized as descriptive.").

The same rule applies here to the lone element "Joe's."  Plaintiff has no evidence that "Joe's" -- on its own -- has acquired significance in absence of the dominant element "TRADER."  In absence of such a showing, the likelihood of confusion cannot be shown, nor can a claim of irreparable harm be seriously taken, particularly where the use of the term JOES is so widely calling into question its strength as a protectable mark in the first instance.

## CONCLUSION AND REQUESTED RELIEF

Defendant asked this Court to deny Plaintiff's application for TRO/PI at this time, and to set a scheduling conference for either a Preliminary Injunction or regular proceeding on the merits. Defendant also asks the Court to allow for supplemental briefing for the hearing on Tuesday, December 3, 2024.

We thank the Court for its assistance in this matter and remain available at the Court's convenience to discuss any of the foregoing.

Respectfully submitted,
/s/ Alfred W Zaher and Mark Sadaka

cc:  Eugene D. Kublanovsky, Esq.
     Jordan Raphael, Esq.
     Tim Byron, Esq.
     Mark Sadaka, Esq.

00506-Joe's Wine Co.